437 So.2d 280 (1983)
STATE of Louisiana
v.
Edward JOSEPH.
No. 82-KA-1558.
Supreme Court of Louisiana.
September 2, 1983.
Rehearing Denied October 7, 1983.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Kenny Lassus, William C. Credo, Asst. Dist. Attys., for plaintiff-appellee.
Philip E. O'Neill, Gretna, for defendant-appellant.
WATSON, Justice.
Defendant, Edward Joseph, was convicted by a ten to two jury verdict of armed *281 robbery. LSA-R.S. 14:64.[1] Defendant was sentenced to fifty years at hard labor and has appealed his conviction and sentence alleging seven errors by the trial court.

FACTS
On May 1, 1981, at approximately 5:00 A.M., a "Li'l General Food Store" (Tr. 208) at the corner of Veterans Highway and Bonnabel Boulevard was robbed by a black man with a silver revolver. The night manager of the store, Sherman Earl Thomas, surrendered about forty dollars from the cash register in a brown paper bag. Joseph was seen leaving the store by Deputy Sheriff Doskey, who happened to be parked in front. Joseph went around the corner of the building and entered a dark colored automobile. As Joseph left, driving the wrong way on Bonnabel, the night manager came out and told the officer he had been robbed. A chase ensued in the adjacent residential district. Because Joseph's vehicle had a half block lead, Deputy Doskey kept his lights off to prevent the suspect from eluding him. When Doskey got within thirty feet of Joseph's car, Joseph turned south on Bonnabel and extinguished his lights. Doskey then turned on all his lights and made an unsuccessful attempt to stop the suspect. Officers at the intersection of Bonnabel Boulevard and Veterans Highway were also unable to stop Joseph's speeding car. Joseph continued southbound on Bonnabel Boulevard until he hit a police vehicle blocking the North I-10 service road. Deputy Sheriff Grady Smith jumped out just before the crash.
The chase took fifteen to twenty-five minutes and ended approximately four blocks south of the convenience store. Joseph's female passenger pointed a silver .38 revolver at Smith, but it apparently misfired. Smith fired four shots while looking for cover. Joseph, at the scene and at trial, was identified by Doskey, the night manager and a customer of the convenience store, Janet Razavi. Inside Joseph's car was a brown paper bag containing $40.58. At trial, almost seven months after the offense, two of the identifying witnesses could not recall whether or not Joseph had had a mustache. One said he had had no facial hair.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant contends that the trial court violated LSA-C.Cr.P. art. 772[2] by commenting upon the facts in the following colloquy:
"For the record, the Court will describe the gunthe weapon present is apparently a nickel plated silver looking revolver with a kind of handle on it. Mr. D.A.: What kind of revolver?
"MR. LASSUS: .38 caliber revolver.
"MR. O'NEIL: Objection, I object to the court describing anything.
"THE COURT: I asked if there was any objection. Let the Supreme Court find out the best way they can." (Tr. 213-214)
Janet Razavi had just testified that the gun appeared similar to the one that the robber had carried and was the same color. Later, Deputy Doskey identified the weapon as being the one recovered from Joseph's vehicle. Night manager Thomas described it as a silver revolver which appeared to be like the weapon used in the robbery. Deputy Smith testified that the weapon recovered from defendant's vehicle was a .38 caliber silver revolver and the revolver in evidence appeared to be the same one.
*282 Louise Braun, an expert in the field of firearm identification, said the weapon was the one she received in the case of State v. Edward Joseph.
It is questionable whether a description of an item of evidence to record what is fully apparent to the jury constitutes a comment on the facts or a recapitulation of the evidence. In any event, because the evidence identifying the revolver as the weapon used in the robbery was unanimous and overwhelming, the jury's determination could not have been affected. Compare State v. Williams, 375 So.2d 1379 (La., 1979). Since the trial court's remarks did not imply an opinion as to defendant's guilt or innocence, any error was harmless. See State v. Hodgeson, 305 So.2d 421 (La., 1974); State v. Williams, 355 So.2d 1291 (La., 1978) and State v. Williams, 397 So.2d 1287 (La., 1981).
This assignment lacks merit.

ASSIGNMENTS OF ERROR NUMBER TWO AND THREE
Defendant contends that a mistrial should have been granted because inadmissible evidence of other crimes was solicited by the state during the testimony of Sherman Thomas.
The night manager was asked: "Why did you give him the money?" Thomas replied, "Because he had came [sic] to the store on a previous occasion and when he showed me the gun, I knew what he meant." (Tr. 240)
The court concluded that the statement that defendant had been in the store on another occasion did not amount to evidence of another crime and denied a mistrial.
Later, during his identification testimony, Thomas, when asked, "How did you know that was the same person?" replied: "Because he had robbed me on an earlier occasion and I had a good remembrance of him." (Tr. 245)
The trial court concluded that the remark was extemporaneous and unsolicited. He noted that it was made in an unaccentuated monotone. Before the jury returned, Thomas was cautioned against further references to other crimes.
The jury was instructed: "to disregard completely the last remark made by the witness and the answer to his last question that was asked him by the District Attorney. Do not consider this at all in your deliberation." (Tr. 252)
Since the remark was not made by a judge, district attorney, or court official, it is not covered by LSA-C.Cr.P. art. 770.[3] The trial court concluded that an admonition was sufficient to insure a fair trial. LSA-C.Cr.P. art. 771.[4] Defendant argues *283 that the state deliberately solicited the testimony and an admonition was insufficient.
The remarks were voluntary and unresponsive to the prosecutor's questions. See State v. Babin, 336 So.2d 780 (La., 1976) and State v. Michel, 422 So.2d 1115 (La., 1982). The form of the questions does not indicate bad faith on the part of the state. The admonition was sufficient to cure any prejudice resulting from the unsolicited remarks. State v. Perry, 420 So.2d 139 (La., 1982).
These assignments lack merit.

ASSIGNMENT OF ERROR NUMBER FOUR
Defendant contends that the trial court erred in sustaining the prosecutor's objection to the following question posed to witness Thomas: "Did Ms. Razavi ever relate to you that she had been out all that previous evening carousing and drinking?" (Tr. 258)
It is argued that defendant was trying to show Ms. Razavi's state of mind and the question was therefore proper cross-examination under State v. Sheppard, 371 So.2d 1135 (La., 1979). However, Ms. Razavi's state of mind was not at issue. The hearsay objection was properly sustained.
This assignment lacks merit.

ASSIGNMENTS OF ERROR NUMBER FIVE AND SIX
Defendant contends that his sentence of fifty years at hard labor was not imposed in compliance with the sentencing guidelines of LSA-C.Cr.P. art. 894.1. It is argued that the trial court was inaccurate as to his criminal record and the facts of this case. Also, Joseph contends that the sentence is disproportionate and excessive.
In imposing sentence, the trial court noted that Joseph endangered the lives of several police officers and the general citizenry when he raced down Bonnabel and hit the police car. Joseph's accomplice-passenger then tried to shoot the arresting officer. The court concluded that Joseph displayed a blatant disregard for human life.
Joseph had three prior felony convictions. Immediately upon being released from parish prison after a theft conviction, Joseph had been convicted of three counts of armed robbery. He was also convicted of receiving stolen things and simple burglary.
The trial court concluded that Joseph's offense was necessarily punishable by imprisonment; that his criminal record and his conduct during this offense created an undue risk of another crime being committed; that he required correctional treatment; and that a lesser sentence would deprecate the seriousness of the crime.
It is argued that the act of the passenger-accomplice should not have been considered, and Joseph himself did not point the .38 caliber pistol when arrested. Joseph also contends that Deputy Smith's life was not endangered because he had left the vehicle.
Defendant has not specified any factual inaccuracy in the criminal record recited by the trial court. Regardless of the accomplice's act, Joseph showed disregard of human life during his attempt to escape. Defendant was subject to imprisonment for life because of his three prior felonies under LSA-R.S. 15:529.1. The sentence does not appear facially excessive and is within the trial court's discretion.
These assignments lack merit.

ASSIGNMENT OF ERROR NUMBER SEVEN
Defendant contends that no rational trier of fact could have found him guilty of armed robbery.
It is argued that the paper bag in evidence was old, wrinkled and discolored and could not have been the bag given to the armed robber by the night manager. It is contended that the identifications were faulty because defendant had a well developed "Fu Manchu" (Defendant's Brief, p. *284 18) mustache and none of the witnesses recalled this noticeable feature. It is also argued that the state failed to prove the amount of money taken from the cash register and that deputy Smith hit Joseph's vehicle rather than vice versa.
There is nothing in the record to establish that defendant had a mustache at the time of the crime. Three eye witnesses identified him within thirty minutes of the robbery and also at trial. Manager Thomas testified that the brown bag looked like the one he gave the robber, and he calculated how much money was taken by running a tape to determine what was missing from the cash register. This evidence established the amount stolen with sufficient precision. Joseph was caught red-handed with the gun and money in his possession. No reasonable doubt of his guilt exists. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
This assignment of error lacks merit.
For the foregoing reasons, the conviction and sentence of defendant, Edward Joseph, are affirmed.
AFFIRMED.
DENNIS, J., concurs.
NOTES
[1] LSA-R.S. 14:64 provides:

"A. Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
"B. Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence."
[2] LSA-C.Cr.P. art. 772 provides:

"The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted."
[3] LSA-C.Cr.P. art. 770 provides:

"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
"(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
"(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
"(3) The failure of the defendant to testify in his own defense; or
"(4) The refusal of the judge to direct a verdict.
"An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial."
[4] LSA-C.Cr.P. art. 771 provides:

"In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
"(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
"(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
"In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial."