JjBAGNERIS, Judge.
Defendant, Louis Pitts, was charged by bill of information with armed robbery (count one), a violation of La.R.S.14:64, and with attempted second-degree murder (count two), a violation of La. R.S. 14:27(30.1). After a trial, the jury returned a verdict of guilty of attempted first-degree robbery on count one and not guilty on count two. Defendant was sentenced to fifteen years at hard labor without benefit of probation, parole, or suspension of sentence. Defendant filed a motion to reconsider the sentence, which was denied. Defendant now appeals, arguing that (1) the trial judge erred when he read the defendant’s statement to the jury; (2) the evidence adduced at trial was insufficient to support the verdict; (8) the sentence imposed is constitutionally excessive.

FACTS

On May 9, 1996 at about 3:00 a. m., Feltus Sterling, a cab driver had dropped off a fare near the St. Bernard Housing Project when Louis Pitts, the defendant, approached him. Pitts asked Sterling to take him and two other males to Mirabeau Street. Pitts got into the front passenger seat, and the other two got into the back of the cab. Pitts directed Sterling to take three left turns in succession, until they arrived back near the St. Bernard Housing Project. Pitts told [ ^Sterling to stop in the deserted area. Pitts stomped his foot and the man seated behind Sterling placed a metal pipe over Sterling’s head and around his neck as if to choke him. Pitts then got between Sterling and the steering wheel, reaching for Sterling’s shirt pocket. Sterling tried to pull the metal bar from his throat. Sterling then pulled a .380 caliber semiautomatic handgun from between his legs and unlatched the safety. The gun accidentally discharged through the windshield. Pitts and the two other men began to struggle with Sterling for the weapon. Sterling attempted to shoot the gun but it jammed. Sterling dropped the gun and grabbed a .38 caliber revolver from his side.
Pitts and the two other males scrambled out of the cab, and ran in different directions. Pitts grabbed the gun on the floor of the cab and ran with it. Sterling chased after Pitts and shot at him until his revolver was out of bullets. Pitts was wounded in his thumb and the back of the shoulder. Pitts fired back at Sterling and wounded Sterling in the stomach. Sterling walked to the front lawn of someone’s residence and asked for help. The resident called the police and comforted Sterling until the police and ambulance arrived.
On May 9, 1996 at 11:30 a.m., Officer Leroy St. Martin was dispatched to investigate an aggravated battery by shooting and armed robbery on Foy Street. Upon arrival, Officer St. Martin spoke with Pitts who reported that he had been robbed and shot by two men at one or two in the morning when he was on his way from his girlfriend’s house. Pitts gave a detailed account of the robbery, shooting and a detailed description of the perpetrator.
Chris Billiot, the follow up officer, reviewed the facts and concluded that Pitts was the perpetrator wounded by Sterling, the cab driver in the earlier incident. The pellet taken from Pitts’ thumb was retrieved from Charity Hospital and | acompared to a pellet, which was test-fired from Sterling’s .38 caliber revolver. The State firearms expert determined that the pellet retrieved from Pitts was the same as fired from Sterling’s revolver. Upon receipt of the report from ballistic, Officer Billiot obtained an arrest warrant for Pitts.
Upon arrest Pitts voluntarily gave a statement regarding his account of the incident with the cab driver. Pitts admitted that his police report given to Officer *233 St. Martin was false. While Pitts was making his statement he was interrupted for twenty minutes while officers attempted to locate the two other perpetrators involved in the incident. The officers were unsuccessful in finding the other two perpetrators. Pitts resumed giving his statement to the Officer Billiot. Pitts and Officer Billiot signed the statement and another officer witnessed it.
Pitts in his statement to Officer Billiot stated that he flagged down the cab on May 9,1996 for himself and his friends but denied knowing that his friends intended to rob the cab driver. He further stated that he never attempted to take the cab driver’s money, but rather offered to pay him for the ride, if he would stop shooting. He stated that he shot the cab driver in self-defense.

ERROR PATENT REVIEW

A review of the record for errors patent indicates that there are none.

ASSIGNMENT OF ERROR NO. ONE

Pitts contends that the trial court erred by reading his statement aloud to the jury. According to Pitts, this reading by the judge emphasized the statement in the minds of the jury. Pitts argues that this is equivalent to a comment on the evidence, in violation of La.C.Cr.P. art. 772; and further it is a denial of due process, in violation of the United States and Louisiana Constitutions. We 1¿disagree.
La.C.Cr.P. art. 772 provides:
The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or to a comment on the evidence, in violation of La.C.Cr.P. art. 772; and further it is a denial of recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted.
One element of a fair trial is the requirement of complete neutrality on the part of the judge. State v. Jones, 593 So.2d 802 (La.App. 4th Cir.1992). It is the duty of the trial judge to abstain from any expression of opinion or comment on facts or evidence in a criminal jury trial. State v. Williams, 375 So.2d 1379 (La.1979). To constitute reversible error, the effect of improper comments must be such as to have influenced the jury and contributed to the verdict. State v. Johnson, 438 So.2d 1091 (La.1983).
In the instant case, the trial judge did not comment upon the evidence, but merely read the defendant’s properly admitted statement into the record. The State offered the statement into evidence at the conclusion of its case, and asked that it be either passed out to the jurors or read aloud. Defense counsel objected to either option, arguing that the officer had already testified as to the general content of the statement. The court ruled that the State had a right for the jury to hear or read the statement in its entirety, then proceeded to permit both.
After our review of the record, we find that the statement was generally consistent with Pitts’ trial testimony, and it did not prejudice the jury against the defense or negatively effect the verdict. Rather, Pitts convinced the jury that he shot the victim in self-defense and was acquitted on the attempted murder charge. However, Pitts did not convince the jury with his protestation that he was unaware |Bof the robbery intentions of his compatriots.
Therefore, we find that after considering the totality of the evidence and the fact that the jury acquitted Pitts of the attempted second degree murder, the reading of the defendant’s confession by the trial judge, was harmless. State v. Joseph, 437 So.2d 280 (La.1983); State v. Thome, 503 So.2d 760 (La.App. 3rd Cir.1987), tvrit granted; remanded on other grounds, 514 So.2d 1170 (La.1987). Accordingly, this assignment is without merit.

ASSIGNMENT TWO

Pitts contends argues that the evidence adduced at trial was insufficient to support the conviction for attempted first degree *234 robbery. Pitts bases this claim on the victim’s inability to identify him at a photographic lineup, and the conflicting testimony relative to money or other property which may have been taken from the victim in the incident.
In reviewing claims, challenging the sufficiency of evidence to support a conviction, the appellate court must determine whether,after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987). On appeal this court will not assess the credibility of witnesses or reweigh the evidence. State v. Rosiere, 488 So.2d 965, 968 (La.1986); State v. Jones, 537 So.2d 1244 (La.App. 4th Cir.1989). The trier of fact’s credibility determination will not be disturbed on appeal unless clearly contrary to the evidence. State v. Vessell, 450 So.2d 938 (La.1984).
To convict for first degree robbery, the State must prove that the defendant | fitook something of value by use of force or intimidation, or led the victim to reasonably believe that he was armed with a dangerous weapon. La. R.S. 14:64.1. To be guilty of an attempt, a person must have a specific intent to commit a crime, and must do or omit some act for the purpose of and tending directly toward accomplishing his object. La. R.S. 14:27(A).
Specific criminal intent is “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” La. R.S. 14:10(2). As provided in La. R.S. 14:24: “All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.”
The fact that the victim was unable to identify Pitts in a photographic lineup is irrelevant in this case because Pitts admitted, in a voluntary pre-trial statement and on the witness stand, that he was the shooter.
The issue of whether or not money or property was taken from the victim is also irrelevant to this conviction for attempted robbery. The victim testified that money was taken from his shirt pocket. One of the officers admitted that, according to the police report, the money was removed from the victim’s pocket by the EMS technicians when they removed his clothing to treat his gunshot wound. Other cash was found in the cab. Pitts testified that he took the victim’s .380 caliber gun to protect himself because the victim was shooting at him with a second gun.
The jury may have found Pitts’ taking the victim’s gun was reasonable under the circumstances. The jury may likewise have determined that Pitts did not take |7the cash from the victim’s pocket. However, a reasonable jury could still have concluded, from Pitt’s circuitous directions to an abandoned area, his stomping on the floor of the cab as an apparent signal, and his attempt to reach into the victim’s pocket, that Pitts had specific intent to rob the victim. Even without Pitts’ admission that he knew one of his friends picked up the metal rod earlier in the evening, a reasonable jury could likewise assume that he knew the weapon would be used to facilitate the robbery. Accordingly, this assignment is without merit.

ASSIGNMENT THREE

Pitts contends that his sentence of fifteen years at hard labor is constitutionally excessive. He avers that the trial court failed to consider the aggravating and mitigating factors, as required by La.C.Cr.P. art. 894.1; failed to sufficiently articulate reasons for the sentence; and imposed a *235 sentence that is disproportionate to the severity of the crime.
Article 1, Section 20 of the Louisiana Constitution of 1974 provides that “No law shall subject any person ... to cruel, excessive or unusual punishment.” A sentence within the statutory limit is constitutionally excessive if it is “grossly out of proportion to the severity of the crime” or is “nothing more than the. purposeless imposition of pain and suffering.” State v. Caston, 477 So.2d 868 (La.App. 4th Cir. 1985).
Generally, an appellate court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982). If adequate compliance with La.C.Cr.P. article 894.1 is |sfound, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Guajardo, 428 So.2d 468 (La.1983); State v. Quebedeaux, supra.
Pitts was sentenced to serve fifteen years at hard labor without benefit of probation, parole or suspension of sentence. The maximum sentence for attempted first degree robbery is twenty years without benefits. At the sentencing hearing, the trial court recited Pitts’ extensive juvenile and adult record, obtained from the pre-sentence report. As noted by the court, Pitts’ juvenile record includes adjudication for aggravated battery, carrying a concealed weapon, criminal mischief, extortion, and second-degree battery. Pitts’ adult record includes a conviction for contributing to the delinquency of a juvenile, an arrest for aggravated assault and a separate arrest for battery.
The trial court noted that the offense for which Pitts was convicted prohibited probation or parole. The court further noted that the probation department recommended the maximum period of incarceration. The court noted that the conviction was the result of “a very serious and a very dangerous situation.” The court concurred in the jury’s finding that Pitts was a willing participant in the attempted robbery. Though not recited in full at the sentencing, the pre-sentence report gave a detailed account of the Pitts’ history of violence and his need for long-term psychiatric care. To the reporting officer “it [appeared] the subject would be likely to commit another like offense very soon upon his release from incarceration.” For this reason, the officer recommended the maximum sentence as a protection to the public.
1 ^Considering the trial court’s review of the Pitts’ record, and the facts of the instant case, there was no error in the sentence imposed by the trial court. This assignment is without merit.

CONVICTION AND SENTENCE AFFIRMED.